*463
 
 HILL, Circuit Judge:
 

 On February 17,1984, the Internal Revenue Service levied upon the assets of A & B Heating & Air Conditioning, Inc. for failure to pay withheld trust fund taxes
 
 [1]
 
 and other delinquent taxes. Ten days later, A
 
 &
 
 B Heating filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. The proposed bankruptcy plan provided for the payment of the debtor’s federal tax liability over a period not to exceed six years, with the first payments being allocated towards the trust fund taxes. By paying off the trust fund taxes, the corporate president and sole shareholder would be relieved of his separate liability under 26 U.S.C. § 6672 (1982) for these trust fund taxes. The government objected to the debtor’s reorganization plan, arguing that the debtor had no right to allocate its payment of taxes. The bankruptcy court overruled the government’s objection to the plan. The district court affirmed.
 

 As a general rule, when a taxpayer directs the manner in which a payment is to be allocated among various taxes due, the Internal Revenue Service must comply with the taxpayer’s request.
 
 Wood v. United States,
 
 808 F.2d 411, 416 (5th Cir.1987). When, however, a payment is involuntary, the government is free to allocate the payment as it chooses.
 
 Muntwyler v. United States,
 
 703 F.2d 1030, 1032 (7th Cir.1983). The definition of involuntary payments is set forth in
 
 Amos v. Commissioner,
 
 47 T.C. 65, 69 (1966): “An involuntary payment of federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.” The courts are equally divided as to whether tax payments made pursuant to a bankruptcy plan are voluntary.
 
 [2]
 

 The rationale of the courts which have found payments in bankruptcy to be involuntary was succinctly summarized in
 
 In re Frost,
 
 47 B.R. 961, 965 (D.Kan.1985) (payments under Chapter 13 held involuntary):
 
 *464
 
 The Seventh Circuit in dicta expressed a similar sentiment.
 
 See Muntwyler v. United States,
 
 703 F.2d 1030, 1034 n. 2 (7th Cir.1983). In
 
 Avildsen v. United States (In re
 
 Avildsen), 40 B.R. 253, 256 (N.D.Ill.1984), the court found such reasoning to be equally applicable to all bankruptcy proceedings: “[T]he fact that this case deals with a reorganization rather than a liquidating bankruptcy does not change the involuntary nature of the payments.” Additionally, the government’s position is strengthened by the argument that allowing the debtor to allocate the payment of taxes solely benefits the responsible officers of the corporation without benefitting the corporation or Internal Revenue Service. Accordingly, a strong argument is made that the separate liability imposed under 26 U.S.C. § 6672 (1982) should remain upon the heads of the corporate officers whose actions, or inaction, resulted in the dissipation of the trust fund taxes.
 
 In re Tam Specialty Co.,
 
 57 B.R. 37 (Bankr.N.D.Cal.1985).
 

 
 *463
 
 In order to determine whether a payment to the IRS is voluntary or involuntary, it must be determined whether or not the payment was received through court or administrative action which resulted in an actual seizure of the property or money. The instant bankruptcy proceeding filed by the debtors is a legal action in which the IRS has filed a claim for delinquent taxes. The payments to be made by the debtors are under the bankruptcy court’s jurisdiction and are made pursuant to a plan which must comply with the requirements of the bankruptcy code. Thus, we conclude that payments made by the debtors to the IRS are not voluntary and the IRS has the right to allocate the payments as it sees fit.
 

 
 *464
 
 Equally strong precedent can be found supporting the argument that payments in bankruptcy, particularly in the context of a non-liquidating Chapter 11 proceeding, constitute voluntary payments. The bankruptcy court’s decision in this case points to several aspects of the Chapter 11 proceeding which allow the debtor great latitude in making tax payments:
 

 Court involvement in the context of a Chapter 11 reorganization case is not the type which results in seizure of property or money as in a levy. Unlike a taxpayer faced with a government instituted collection proceeding which may lead ultimately to levy upon the taxpayer’s assets, a Chapter 11 debtor enjoys great latitude in how and if a plan is proposed and thus how and when the IRS will be paid. § 1129 requires only that a plan provide for payment of pre-petition taxes over a period not to exceed 6 years from the date of assessment in order that it may be confirmed. The debtor propounding a plan has a number of options with respect to treatment of a claim by the IRS and it is the freedom afforded by these options which dictates the conclusion that payments to the IRS pursuant to a confirmed Chapter 11 plan of reorganization are voluntary.
 

 In re A & B Heating & Air Conditioning,
 
 53 B.R. 54, 57 (Bankr.M.D.Fla.1985),
 
 aff'd,
 
 No. 85-1552-Civ-T-13 (M.D.Fla. May 7, 1986). Similarly, the United States Bankruptcy Court for the District of Colorado has concluded: “The fact that payments are made pursuant to a plan which must comply with the requirements of the Bankruptcy Code does not rise to a level of court action equivalent to a levy, judicial order, execution or judicial sale.”
 
 In re Lifescape, Inc.,
 
 54 B.R. 526, 529 (Bankr.D.Colo.1985) (Chapter 11).
 

 These contradictory court holdings are a direct result of the conflicting policies behind the Bankruptcy Code and Internal Revenue Code.
 
 [3]
 
 On the one hand, Congress, by enacting 26 U.S.C. § 6672 (1982) intended to impose liability upon corporate officers who allow trust fund taxes to be used for any purpose other than the payment of withheld taxes:
 

 The laws of the United States require all employers to withhold from their employees’ gross wages a scheduled amount representing the employees’ FICA and income tax obligations. As to the
 
 *465
 
 amount representing income tax with-holdings, the Internal Revenue Code states that these amounts “shall be held to be a special fund in trust for the United States.” 26 U.S.C. § 7501 (1982). If the employer violates this fiduciary obligation and misappropriates these withholding funds (even if in a purported good faith effort to keep the business afloat), the United States must nevertheless extend a credit to the employees as if the funds were properly paid over to the government.... Because the government bears the loss caused by an employer’s defalcation, Congress has provided the government with several remedies, one of which lies against the individual personally responsible for the misappropriated funds. [26 U.S.C. § 6672 (1982)] was intended to “cut through the shield of organizational form” and impose liability upon those individual persons actually responsible for an employer’s failure to withhold and pay over the taxes.
 

 United States v. Huckabee Auto Co.,
 
 46 B.R. 741, 743 (M.D.Ga.1985) (citations omitted), aff
 
 'd,
 
 783 F.2d 1546 (11th Cir.1986). Furthermore, we have consistently recognized that the Internal Revenue Service is charged with the responsibility to collect all taxes due. Public policy dictates that the Internal Revenue Code be interpreted in such a manner as to maximize the public fisc.
 

 On the other hand, Congress has enacted a detailed Bankruptcy Code which sets forth an orderly process by which creditors of a bankrupt entity are to be repaid. In doing so, Congress “has provided bankrupts with extensive protection from their creditors and a reasonable opportunity to rehabilitate not only for their benefit but for that of the public as well.”
 
 In re Energy Resources Co.,
 
 59 B.R. 702, 706 (Bankr.D.Mass.1986). The Code expresses a preference toward reorganization rather than liquidation; a viable reorganization plan typically provides greater payment to creditors while preserving the economic life of the entity. Permitting the Internal Revenue Service to allocate tax payments in all Chapter 11 proceedings runs contrary to this policy. In numerous Chapter 11 reorganizations, the failure to allow the debtor to allocate tax payments is detrimental to the reorganization plan:
 

 If corporate officers are pressured to pay the taxes out of their own pockets, the incentive to continue successful reorganization is reduced, and it becomes more likely that the responsible officers will convert to Chapter 7 liquidation. Under Chapter 7, as in Chapter 11, taxes have priority; the government will be paid in full whether sufficient funds remain for other unsecured creditors or not. The responsible officers are guaranteed that no tax penalty will be assessed against them personally.
 

 Note,
 
 Bankruptcy Court Jurisdiction and the Power to Enjoin the IRS,
 
 70 Minn.L. Rev. 1279, 1299-1300 (1986). Frequently, the efforts put forth by these officers during the reorganization is the corporation’s only hope for future viability. In the absence of an express congressional statement that the Internal Revenue Code is to take priority over the Bankruptcy Code with regard to the allocation of tax payments, we decline to accept the argument of the IRS that all payments made under a Chapter 11 reorganization are involuntary and thus properly allocated by the IRS.
 

 In weighing the competing public policy considerations of the Internal Revenue and Bankruptcy Codes, we are persuaded by the court’s reasoning
 
 in In re B & P Enterprises, Inc.,
 
 67 B.R. 179, 183 (Bankr.W.D.Tenn.1986):
 
 [4]
 
 “the allocation question in a Chapter 11 case under the Bankruptcy Code should be left to judicial discretion to be decided on a case-by-case basis.” In making this determination, the bankruptcy
 
 *466
 
 court is to consider the “equitable reasons warranting such allocations.” Typically, the court should look to
 

 the history of the debtor, the absence or existence of prebankruptcy collection or “enforced collection measures” of the I.R.S. against the corporation and responsible corporate officers; the nature and contents of a Chapter 11 plan (e.g., last resort liquidation or reorganization); the presence, extent and nature of administrative and/or court action; the presence of pre-or post-bankruptcy agreements between the debtor (or trustee) and the I.R.S.; and the existence of exceptional or special circumstances or equitable reasons warranting such allocation.
 

 Id.
 
 at 184. Most importantly, the bankruptcy judge should consider whether the proposed plan is merely a stop gap scheme to hold the taxing authority at bay with little chance that the debtor will fulfill its obligation under the plan. We recognize that the bankruptcy judge has previously considered and passed on the feasibility of the plan. In light of our pronouncement herein, we think it best to remand to the district court with directions that the bankruptcy court weigh the impact the proposed allocation would have upon the debtor, Internal Revenue Service, and other creditors. Should the bankruptcy court conclude that the interests of all parties would be best served by allowing the debtor to allocate the payment of taxes, then that determination should stand in the absence of abuse of discretion. Accordingly, we REMAND to the district court for further proceedings consistent with this opinion.
 

 [1]
 

 . “Trust fund" taxes consist of social security and federal income taxes withheld by an employer from the wages of the employees.
 
 See
 
 26 U.S.C. § 3102 (1982) (placing duty of collection upon employer). These funds are to be held in a special trust for the United States. 26 U.S.C. § 7501 (1982). The Internal Revenue Code imposes personal liability on responsible corporate officers who fail to remit these funds to the government. 26 U.S.C. § 6672 (1982).
 

 [2]
 

 . Ten courts have found tax payments made pursuant to a bankruptcy plan to be involuntary.
 
 In re Frost,
 
 47 B.R. 961 (D.Kan.1985);
 
 In re Mister Marvins, Inc.,
 
 48 B.R. 279 (E.D.Mich.1984);
 
 Avildsen
 
 v.
 
 United States, (In re Avild
 
 sen), 40 B.R. 253 (N.D.Ill.1984),
 
 aff’d,
 
 794 F.2d 1248 (7th Cir.1986);
 
 In re Herald,
 
 66 B.R. 169 (Bankr.E.D.N.C.1986);
 
 In re Tam Specialty Co.,
 
 57 B.R. 37 (Bankr.N.D.Cal.1985);
 
 In re Office Dynamics, Inc.,
 
 39 B.R. 760 (Bankr.N.D.Ga. 1984);
 
 In re Obie Elie Wrecking Co.,
 
 35 B.R. 114 (Bankr.N.D.Ohio 1983);
 
 Hannan Trucking, Inc. v. United States (In re Hannan Trucking, Inc.),
 
 17 B.R. 475 (Bankr.N.D.Tex.1981);
 
 Hubler v. Gutman (In re Hubler Rentals, Inc.),
 
 79-2 U.S.Tax Cas. (CCH) ¶9621 (Bankr.E.D.Pa.1979);
 
 In re Vincent-McCall Co.,
 
 68-2 U.S.Tax.Cas. (CCH) ¶ 9591 (Bankr.E.D.Wis.1968). Six decisions have found payments made pursuant to a Chapter 11 reorganization to be voluntary.
 
 Tom LeDuc Enter. v. United States (In re Tom LeDuc Enter.),
 
 47 B.R. 900 (W.D.Mo.1984);
 
 In re Energy Resources Co.,
 
 59 B.R. 702 (Bankr.D.Mass.1986);
 
 Hineline v. Household Finance Corp. (In re
 
 Hineline),
 
 57
 
 B.R. 248 (Bankr.W.D. Ohio 1986);
 
 In re Lifescape, Inc.,
 
 54 B.R. 526 (Bankr.D.Colo.1985);
 
 In re Franklin Press, Inc.,
 
 52 B.R. 151 (Bankr.S.D.Fla.1985);
 
 In re Hartley Plumbing Co., 32
 
 B.R. 8 (Bankr.M.D.Ala.1983).
 

 [3]
 

 . The conflicting goals of tax collection and rehabilitation of bankruptcy entities was specifically recognized by Congress in drafting the Bankruptcy Code:
 

 In a broad sense, the goals of rehabilitating debtors and giving equal treatment to private voluntary creditors must be balanced with the interests of governmental tax authorities who, if unpaid taxes exist, are also creditors in the proceeding.
 

 [[Image here]]
 

 A three-way tension thus exists among (1) general creditors, who should not have the funds available for payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 13-14,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5799-800.
 

 [4]
 

 . In
 
 B & P Enterprises,
 
 the court set forth a requirement that the debtor must demonstrate "exceptional or special circumstances” justifying the allocation.
 
 Id.
 
 at 184. The court proceeded to conclude that the debtor had not overcome this hurdle. We decline to adopt this "exceptional circumstances" test; rather, we hold that the determination of whether a debtor should be permitted to allocate taxes in a Chapter 11 reorganization is best left to the bankruptcy court upon consideration of the bankruptcy plan as a whole.