**In the Matter of INTERMARKET, INC., Debtor.**

**The UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant,**

v.

**INTERMARKET, INC., Appellee.**

Civ. No. K–87–3304.
Bankruptcy No. 87–5–0163.

United States District Court,
D. Maryland.

Aug. 29, 1988.

Breckinridge L. Willcox, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., Frederick J. Baker, Atty., Tax Div., ·U.S. Dept. of Justice, Washington, D.C., for appellant.

Alan M. Grochal, Baltimore, Md., for appellee.

San A. Harris, Baltimore, Md., for Creditors Comm. of Intermarket, Inc.

MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Senior District Judge.

*Factual Background*

Intermarket, Inc. (Intermarket) was an advertising agency in Baltimore, Maryland which, as a significant portion of its business, performed advertising, marketing and public relations services for Old Court Savings and Loan, Inc. (Old Court) and Old Court's related entities. When Old Court and its related entities encountered financial difficulties in 1985, they were unable to continue paying Intermarket for its services. As a result, on January 27, 1987, Intermarket filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code, the chapter concerning reorganization. On April 16, 1987, Intermarket filed its plan of reorganization.

As required by Chapter 11, Intermarket's plan of reorganization provided for the repayment of back taxes to the Internal Revenue Service (IRS) over a period not to exceed six years. *See* 11 U.S.C. § 1129(a)(9)(C); 11 U.S.C. §§ 507(a)(7)(C)–(D). However, Intermarket's plan also provided that Intermarket, as the debtor-in-possession, could allocate its tax payments

to the "trust fund" portion of its unpaid taxes *prior* to the payment of the *non-trust fund* portion of those taxes.[1] The IRS objected to this latter provision, contending that since such payments were "involuntary" on the part of Intermarket, only the IRS had the power to designate how Intermarket's tax payments should be allocated.

On September 28, 1987, a confirmation hearing concerning the plan was held in the Bankruptcy Court. During that hearing, both the IRS and Intermarket specifically asserted their respective positions as to whether or not Intermarket's payments to the IRS were involuntary because those payments were made in a bankruptcy context. On October 9, 1987, the Bankruptcy Court entered an order confirming Intermarket's proposed reorganization plan. In its order, the Bankruptcy Court stated:

> [T]his Court specifically finds that payments pursuant to a Chapter 11 Plan of Reorganization are voluntary payments that can be applied in the manner designated by the debtor-in-possession [*i.e.*, Intermarket].

The IRS appeals the Bankruptcy Court's order, seeking a reversal of the decision that a debtor's tax payments are voluntary even when made pursuant to a Chapter 11 plan of reorganization.

### Discussion

For the reasons stated by the Third Circuit in *In re Ribs–R–Us, Inc.;* 828 F.2d 199 (3d Cir.1987), and by the Ninth Circuit in *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987), adopting what may be described as the *per se* "involuntary" approach, the decision of the Bankruptcy Court overruling the objections of the IRS to the Chapter 11 Reorganization Plan filed by the debtor, Intermarket, is hereby reversed.[2] In reaching this conclusion, this Court has carefully considered the contrary views of the Eleventh Circuit in *In re A & B Heating & Air Conditioning, Inc.*, 823 F.2d 462 (11th Cir.1987), *vacated and remanded,* —— U.S. ——, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988).[3] In *A & B Heating,* the Eleventh Circuit opted for a " 'case-by-case' " approach, applying standards substantially as set forth by the bankruptcy court in *In re B & P Enterprises, Inc.*, 67 B.R. 179 (Bankr.W.D.Tenn.1986). 823 F.2d at 465–66 (quoting in part from *In re B & P Enterprises,* 67 B.R. at 183–84). In this case, the Bankruptcy Judge did not point to or rely upon any specific factors, but rather seemingly adopted a third approach, *i.e.*, what may be deemed the *per se* "voluntary" approach. *See Technical Knockout Graphics,* 833 F.2d at 802 n. 1 (collecting cases dealing with *per se* voluntary approach).

For the reasons indicated in the Eleventh, Third, and Ninth Circuit opinions, this Court will not follow the "voluntary" approach. *See A & B Heating,* 823 F.2d at 463–65; *Ribs–R–Us,* 828 F.2d at 202–03; *Technical Knockout Graphics,* 833 F.2d at 801–03. If it were to adopt the Eleventh Circuit's view, this Court would remand this case to the Bankruptcy Court for application of the standards set forth by the Eleventh Circuit. *See A & B Heating,* 823 F.2d at 465–66. However, this Court will not so do in this case for the reasons indi-

---

1. So-called "trust fund" taxes are taxes which Congress requires an employer to hold in a special trust fund for the United States until the employer remits the funds to the IRS. *See* 26 U.S.C. § 7501; *Holcomb v. United States*, 622 F.2d 937, 938 (7th Cir.1980). Among the various trust fund taxes are the social security taxes and federal income taxes which employers must withhold from the wages of their employees. *See* 26 U.S.C. §§ 3102, 3402; *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir.1986).

2. In this case, as in *In re Ribs–R–Us, supra,* the reorganization plan called for tax payments to be allocated first to the payment of trust fund tax obligations. In *In re Technical Knockout Graphics, supra,* the specific issue posed was whether payment of taxes could be allocated first to trust fund obligations after the debtor had filed a petition for reorganization under Chapter 11, but prior to confirmation of the reorganization plan itself. 833 F.2d at 801. However, the Ninth Circuit's analysis in that case would appear fully applicable herein.

3. The relevance to this case of the Supreme Court's actions in *A & B Heating* are discussed *infra.*

cated by the Third Circuit. 828 F.2d at 202.

Accordingly, this case will be remanded to the Bankruptcy Court for further proceedings in accordance with the "involuntary" approach adopted by the Third and Ninth Circuits. However, the Court will only so remand if the issue in this case is not moot. On May 16, 1988, the Supreme Court granted the United States' petition for writ of certiorari in *A & B Heating*. In so doing, it vacated the judgment entered by the Eleventh Circuit in that case, remanded the case to the Court of Appeals to consider the question of mootness, and indicated no view whatsoever concerning the question at issue in this case. 108 S.Ct. at 1724. The mootness issue in this case has seemingly not been addressed by the Bankruptcy Court or by counsel. After reviewing the Supreme Court's actions in *A & B Heating*, this Court believes that it is necessary to learn upon what grounds the Supreme Court based its decision, and then to determine whether or not those same type of circumstances are present herein. In that regard, on or before September 13, 1988, counsel on both sides are asked to address one joint letter to this Court, either signed by both counsel or by one of counsel on behalf of both sides, in which they discuss the mootness question in the manner described above.

It is so ORDERED.