In re Virginius A. MARKS, Debtor.

Daniel L. BAKST, Trustee, Plaintiff,

v.

Virginius A. MARKS, Defendant.

Nos. 90–8402–CIV, 90–8409–CIV.

United States District Court, S.D. Florida.

Aug. 29, 1991.

Andrew J. Nierenberg, Coral Gables, Fla., for plaintiff.

Kenneth Scherer, John M. Koenig, Jr., Leslie Gern Cloyd of Ackerman, Bakst, Cloyd, & Scherer, West Palm Beach, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE has come before the Court upon Virginius A. Marks's appeal from a final judgment of the United States Bankruptcy Court for the Southern District of Florida. The bankruptcy court entered judgment against Marks and in favor of Daniel Bakst on May 23, 1990. The parties have briefed the issues raised on this appeal fully, and the Court heard oral argument of counsel on Friday, July 19, 1991. The appeal is now ripe for disposition.

### I. Background

After the bankruptcy court entered final judgment, the court prepared a memorandum opinion dated May 23, 1990, outlining its decision. This Court will adopt the factual findings of the bankruptcy court as announced in that opinion. However, the Court will summarize briefly those facts relevant to the issues on appeal.

The appellant Marks is an obstetrician-gynecologist practicing in North Palm Beach, Florida. In 1975, Marks established a certificate of deposit Keogh account at First Federal Savings and Loan of Palm Beach. In 1982, he opened a second certificate of deposit Keogh account at Southeast Bank.

On November 21, 1984, William and Deborah Hopkins filed a medical malpractice suit against Marks. After the Hopkins filed suit, Marks transferred almost all his assets to his wife. The only assets which remained in Marks's name were the two Keogh certificates of deposit. A jury returned a verdict against Marks in the Hopkins's lawsuit, and on April 22, 1986, the state court entered judgment in favor of Deborah and William Hopkins and against Marks in the total amount of $2,000,000.00.[1]

After the state court entered judgment against him, Marks sought the advice of an attorney as to how he might protect his assets. After consulting with the attorney, Marks met with Gordon Gaster who was associated with the E.F. Hutton Company. Almost immediately after he met with Gaster, on or about May 28, 1986, Marks liquidated the two Keogh certificates of deposit and used the entire proceeds, $201,212.13, to purchase two annuity contracts through E.F. Hutton and Company Central Life Assurance Company.

When the judgment creditors learned of the transaction, they commenced a supplementary proceeding in the state court in an attempt to set aside the liquidation of the certificates of deposit and the subsequent purchase of the annuity contracts as a fraudulent transfer. The trial of the supplementary proceeding was set for February 15, 1989. However, on February 14, 1989, Marks filed a voluntary petition of bankruptcy under chapter 7 of the bankruptcy code, halting the state court proceeding.

Daniel Bakst assumed the position of trustee. Marks sought to exempt the annuity contracts from the estate, but Bakst filed a timely objection. On November 29, 1989, the trustee filed this adversary proceeding in an effort to set aside the conversion of the Keogh certificates of deposit into the annuity contracts pursuant to 11 U.S.C. §§ 544 and 550 and Fla.Stat. §§ 726.101, *et seq.*, as well as its predecessor statute Fla.Stat. §§ 726.01 *et seq.*

The bankruptcy court conducted a trial in this matter on May 8, 1990. Ultimately,

---

1. The original judgment was for an amount in excess of $2,000,000.00. However, the amount of Deborah Hopkins's award was reduced.

the court found for the trustee and entered judgment against Marks. The bankruptcy court's judgment found Marks's conversion of the Keogh certificates of deposit into annuities to be fraudulent. Accordingly, the Court set the transfers aside and directed Marks to turn the contracts over to the trustee. Marks appealed.

## II. Issues and Standard of Review

### A. *Standard of Review*

■ The Court will review the bankruptcy court's conclusions of law *de novo*. *See In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). Where an issue raises a mixed question of law and fact, the Court likewise will review the bankruptcy court's determination *de novo*. *In re Mader*, 108 B.R. 643, 644 (N.D.Ill.1989). However, this Court will not overturn the bankruptcy court's factual findings unless the Court determines that those findings are clearly erroneous. *In re Pepenella*, 103 B.R. 299, 300 (M.D.Fla.1988).

### B. *Issues*

Marks contends that the bankruptcy court committed four errors which warrant reversal. First, he contends that the bankruptcy court erred by admitting into evidence testimony and documents relating to a series of asset transfers which the debtor effected in 1985. Second, he argues that the bankruptcy court erred by refusing to disqualify the trustee and his counsel despite uncontradicted evidence that the trustee had a conflict of interest, as well as evidence that the trustee violated the automatic stay provision of 11 U.S.C. § 362(a) when he obtained a personal charging lien upon the assets of the debtor. Next, Marks claims that the bankruptcy court erred when it held that Marks's termination of his Keogh accounts and his subsequent use of the liquidated funds to purchase the two annuity contracts constituted a "transfer" for purposes of 11 U.S.C. § 544 or Fla.Stat. § 726.101. Finally, Marks contends that the bankruptcy court erred by failing to give proper effect to the applicable exemption law, Fla.Stat. § 222.-21(2)(a), which he claims was in effect on the petition date and which he contends is

controlling in this suit pursuant to 11 U.S.C. § 522(b)(2)(A).

## III. Discussion

The Court finds that the appellant's first three contentions clearly lack merit. Accordingly, the Court will reject them without comment. Only the fourth of the appellant's claims warrants discussion.

■ In his fourth point, Marks contends that the bankruptcy court committed reversible error by failing to give proper effect to the applicable exemption law, Fla. Stat. § 222.21(2)(a). The trustee's adversary suit proceeded upon the premise that the Keogh Account funds were non-exempt assets prior to their conversion into annuity contracts, which were indisputably exempt at all relevant times. Marks's transfer of his assets from a non-exempt form to an exempt form constituted the fraudulent transfer which the trustee sought to set aside. Marks contends here that, pursuant to the amendment to the Florida exemption laws which was codified at Fla.Stat. § 222.-21(2)(a), the CD–Keogh accounts were themselves exempt assets on the date of their liquidation. Thus, Marks argues that the allegedly fraudulent transfer really was an innocuous conversion of an exempt asset into a form of asset which also was exempt. This, Marks contends, was not fraudulent.

This Court rejects Marks's contention. The simple reason why Marks's argument must fail is that the date of the conversion of the Keogh accounts and the date upon which the Hopkins obtained a final judgment against Marks both predate the effective date of Fla.Stat. § 222.21(2)(a). Marks is quite correct in his contention that the new Florida statute includes an express provision declaring that its new exemptions are applicable to all proceedings commenced after October 1, 1987. Marks is also quite correct in pointing out that the bankruptcy proceeding commenced after that date. However, this Court will not use a statute which became effective in 1987 to change the nature of a transaction which occurred in 1986. As the bankruptcy court noted, at the time § 222.21(2)(a)

became effective, the CD–Keogh accounts had ceased to exist.

Another difficulty with the Court applying the new exemption provisions to the 1986 transaction exists because Marks's creditors had a vested interest in the Keogh accounts prior to the effective date of Fla.Stat. § 222.21(2)(a). Specifically, Deborah and William Hopkins had obtained a final judgment against Marks in April of 1986. Were this Court to adopt Marks's construction of the statute and apply the new exemption provision to render the CD–Keogh accounts exempt prior to their liquidation, the Court essentially would destroy the vested rights of Marks's creditors. The constitutional validity of such a construction would be questionable. *See Forbes Pioneer Boat Line v. Board of Comm'rs,* 258 U.S. 338, 42 S.Ct. 325, 66 L.Ed. 647 (1922); *Birnholz v. 44 Wall Street Fund, Inc.,* 880 F.2d 335, 338–39 (11th Cir.1989); *Young v. Altenhaus,* 472 So.2d 1152 (Fla.1985); *State, Dept. of Transportation v. Knowles,* 402 So.2d 1155 (Fla.1981). The Court refuses to apply § 222.21(2)(a) retroactively to characterize CD–Keogh account funds as exempt assets where the debtor's creditors obtained a vested interest in the CD–Keogh account funds prior to their liquidation and prior to the effective date of § 222.21(2)(a). Accordingly, the Court will not construe § 222.21(2)(a) as Marks requests.

Instead, the Court will uphold the bankruptcy court's finding that the CD–Keogh accounts were at all relevant times non-exempt assets under Florida law, the passage of § 222.21(2)(a) notwithstanding. The Court finds that the bankruptcy court correctly applied the Florida exemption laws.

Accordingly, having carefully considered the arguments of the parties and the record, and being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED that the judgment of the United States Bankruptcy Court, which judgment was appealed as U.S. District Court case No. 90–8409–CIV–GONZALEZ, is AFFIRMED. The cost judgment, which was appealed as U.S. District Court case No. 90–8402–CIV–GONZALEZ, also is AFFIRMED. The appellee's Motion To Strike Appendix To Appellant's Brief is DENIED.

DONE AND ORDERED.