**KAISER AEROSPACE AND ELECTRONICS CORP. and PAQ, Inc., Appellants/Cross–Appellees,**

v.

**TELEDYNE INDUSTRIES, INC., Appellee/Cross–Appellant.**

**No. 98–540–CIV–GOLD.**
**Bankruptcy Nos. 91–31884–BKC–RAM, 97–702–BKC–RAM–A.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 12, 1999.

Oscar R. Cantu, Bruce Berman, Weil, Gotschal & Manges LLP, and Chris Frank, Miami, Florida, for Kaiser Aerospace & Electronic Corporation.

Calvin B. Brown, Collins, Brown, Caldwell, et al., Vero Beach, Florida, for The New Piper Aircraft, Inc.

Eugene Stearns, Betty Chang Rowe, Stearns Weaver Miller et al., Miami, Florida, for Teledyne Industries, Inc.

### *ORDER AFFIRMING BANKRUPTCY COURT'S FINAL JUDGMENT*

GOLD, District Judge.

THIS CAUSE comes before the Court upon cross appeals from the Final Judgment entered in the adversary action which arose during the pendency of a Chapter 11 proceeding. The Final Judgment and underlying Order Granting in Part and Denying in Part [Cross] Motions for Summary Judgment were entered January 16, 1998 by United States Bankruptcy Judge for the Southern District of Florida, Robert A. Mark, pursuant to Judge Mark's Oral Ruling on January 14, 1998. The issue raised by Appellant and Cross–Appellant as grounds for these appeals is the preclusive effect of a bankruptcy court's ruling on an action filed in state court, which action derives from a contractual relationship formed within the context of the reorganization process.

The Bankruptcy Court found that the doctrine of *res judicata* precludes the equitable relief Appellant seeks, but does not bar the claims for legal remedies. Appellant contends that neither cause of action is barred. Conversely, Appellee urges that the decision of the Bankruptcy Court is *res judicata* as to all actions that arose out of the factual and procedural bases upon which the Chapter 11 proceedings progressed to confirmation of the reorganization plan.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 158(a). The Court has carefully reviewed the record in these appeals, the transcripts of the hearings before the Bankruptcy Court designated in the record on appeal, the parties' briefs, the orders entered by the Bankruptcy Court, and the relevant law. An evaluation of the Bankruptcy Judge's application of the law to the factual findings and circumstances reveals no error on the part of the Bankruptcy Court. Therefore, this Court finds the Order Granting in Part and Denying in Part Motions for Summary Judgment and the Final Judgment rendered thereon should be affirmed.

### I. Factual and Procedural Background

The events giving rise to these appeals derive from a Chapter 11 proceeding filed by Piper Aircraft Corporation ("Debtor") on July 1, 1991. Appellee/Cross–Appellant, Teledyne Industries, Inc. ("Teledyne") was one

of Debtor's largest creditors, holding a judgment of approximately $5,875,000 at the time of the Chapter 11 filing. Accordingly, Teledyne was the only singular unsecured creditor granted exclusivity to participate in the preparation and submission of reorganization plans. Thus, only Teledyne, the Creditors' Committee, and Debtor were permitted to file Chapter 11 reorganization plans for consideration and confirmation by the Bankruptcy Court.

Over the course of the Chapter 11, several plans were submitted for confirmation. The first plan significant to the instant matter was filed by Debtor and the Creditors' Committee on October 13, 1994. That plan contemplated the issuance of stock, cash, and notes to a trust for the benefit of creditors. The plan did not provide for the sale of Debtor's assets.

Several offers to purchase Debtor's assets were proposed to Debtor and the Creditors' Committee. All such offers were rejected. It became apparent that a sale plan could only be effectuated through cooperation and participation with Teledyne, the only other party entitled to file a plan.

Consequently, Teledyne entered into a Cooperation and Shareholders Agreement (the "Agreement") with Kaiser Aerospace and Electronics Corporation ("Kaiser") on November 4, 1994. The Agreement provided that Teledyne and Kaiser would act as co-proponents of a sale plan. Under this plan, a newly formed entity, Piper International Corporation ("PIC"), of which Kaiser and Teledyne would emerge as the sole shareholders, would purchase substantially all of Debtor's assets (the "PIC Plan"). Kaiser was to be the majority shareholder, holding 65% of the stock, while Teledyne was expected to hold 35%. Pursuant to the PIC Plan, PIC proposed to purchase Debtor's assets for $32 million in cash, a $20 million junior secured note, and would assume certain liabilities. In exchange, Teledyne would voluntarily subordinate its claims against Debtor's estate.

The PIC Plan was submitted to the Bankruptcy Court over the objections of Debtor and the Creditors' Committee. Thus, the Bankruptcy Court had two competing plans before it for consideration. A hearing was held on December 15, 1994 to consider approval of the respective disclosure statements. After the hearing, the court concluded that neither plan was viable.[1]

From the time of the hearing through March 1995, formulation of a joint consensual plan was negotiated. Debtor, the Creditors' Committee, Teledyne, Kaiser, and PIC actively participated in the negotiations to achieve consensus on a confirmable plan.

In early-March 1995, the Creditors' Committee and Teledyne agreed on a plan that provided for the acquisition of Debtor's assets. However, Teledyne was no longer aligned with Kaiser.[2] Instead, Teledyne joined with Dimeling, Schreiber & Park ("DS & P") to submit the proposed plan. Subsequently, on March 31, 1995, Debtor, the Creditors' Committee, and Teledyne and DS & P filed an agreed upon joint plan in the Bankruptcy Court.

1. The Bankruptcy Court explained that both plans were rejected because it was evident that the provisions reflected in the plans deviated from the stated positions of the respective parties at the hearing. This dynamic concerned the court, which determined that neither plan could or would be confirmed in its present state. Moreover, efforts were underway to negotiate a consensual plan, which the court found to be the preferable approach.

2. Once the Bankruptcy Court rejected the PIC Plan, the relationship between Teledyne and Kaiser began to erode. The parties differ on the cause of the break down. Teledyne claims that Kaiser, in order to satisfy the Creditors' Committee and Debtor, and to avoid further objections by accommodating the interests of other creditors, demanded that Teledyne accept a reduced interest in the reorganized Debtor, New Piper. According to Teledyne, when it declined Kaiser's modifications, Kaiser refused to attend a critical meeting with Debtor and the Creditors' Committee to negotiate a workable consensual plan, and virtually abandoned the deal outlined in the Agreement. In contrast, Kaiser contends that Teledyne demanded a substantially larger share of New Piper for no additional consideration. When Kaiser insisted that Teledyne honor its obligations under the Agreement, Teledyne unilaterally terminated the Agreement and substituted DS & P, which was willing to accept a lesser share of New Piper, as a co-proponent of what eventually resulted in the Confirmed Plan.

The relevant portions of the joint plan provided that a new entity, New Piper, would acquire substantially all of Debtor's assets. Primary ownership of New Piper would be held by Teledyne and DS & P. An irrevocable trust, set up to obtain the sale and other proceeds to be paid by New Piper, would be formed to make distributions to Debtor's creditors. Under the joint plan, DS & P would hold 48% of the shares of New Piper, while the Trust and Teledyne would each hold 24%.[3] However, Teledyne was given an option to call the shares owned by the Trust. These provisions were included in the Shareholders' Agreement and incorporated into the joint plan.

In exchange for its rights under the joint plan, Teledyne waived all of its claims against Debtor, including the $5,875,000 liquidated judgment claim it had acquired pre-petition. Because of the size of this claim, its waiver materially and substantially increased the distributions available for other creditors and interest holders. Teledyne made these concessions and acquired the stock and stock options in reliance on, and pursuant to, the provisions of the joint plan.

Following two days of confirmation hearings, the Bankruptcy Court entered its order confirming the joint plan on July 11, 1995. Although Kaiser received formal notice and attended the confirmation hearing, it did not file or express any objections to the joint plan at the hearing. Nor did it appeal the confirmation order. Not hearing objection and finding that the joint plan was feasible, the plan submitted by Debtor, the Creditors' Committee, Teledyne, and DS & P was ordered confirmed on July 11, 1995.

Upon learning of the Teledyne/DS & P deal, but prior to the filing of the joint plan, Kaiser filed an action in state court two weeks before the confirmation hearing. Significantly, neither Kaiser nor Teledyne informed the Bankruptcy Court of the pending state court action, in which Kaiser sought damages for Teledyne's alleged breach of contract.

In its original complaint, filed March 20, 1995, Kaiser sought damages from Teledyne for breach of the Cooperation Agreement and for breach of a fiduciary duty. The complaint also sought damages against DS & P for its alleged participation in Teledyne's fiduciary breach and for tortious interference with an advantageous business arrangement. One and a half years after confirmation, Kaiser amended its complaint on December 10, 1996. The amended complaint sought to invoke a constructive trust over the issued and outstanding stock held by Teledyne and DS & P, which stock would have been held by Kaiser under the defunct PIC Plan. Kaiser asked the state court to order Teledyne and DS & P to execute documents transferring the New Piper stock to Kaiser.

Teledyne proceeded through the confirmation process without concern over the state court action, believing that *res judicata* would resolve the issue and bar the relief requested of the state court. However, Teledyne became concerned that a constructive trust would directly and dramatically affect the provisions and distributions of the Confirmed Plan. Initially, Teledyne challenged Kaiser's state court action by moving to enforce the Confirmation Order within the context of Chapter 11. Eventually, at the Bankruptcy Court's urging, Teledyne filed an adversary proceeding on July 8, 1997, in which it sought declaratory injunctive relief. Specifically, Teledyne asked the Bankruptcy Court to delineate the rights of the parties and to enjoin Kaiser from interfering with the distributions and interests provided by the Confirmed Plan.

Teledyne filed a motion for summary judgment in the adversary proceeding. Kaiser opposed the motion and filed a cross-motion for summary judgment. Following the October 27, 1997 oral argument on the cross motions, the Bankruptcy Court took the matter under advisement. Subsequently, on January 14, 1998, the Bankruptcy Court made an oral ruling from the bench. This oral ruling contained an extensive recitation of the facts and circumstances that led to the

---

**3.** The Bankruptcy Court noted that, mathematically, the share distribution only added up to 96%, but determined that the 4% discrepancy was immaterial to the ultimate resolution of the motions for summary judgment.

dispute and were ultimately incorporated into the Order Granting in Part and Denying in Part Motions for Summary Judgment and the Final Judgment on which these appeals are predicated. The Oral Ruling demonstrates the well-reasoned logic upon which the Bankruptcy Judge distinguished between the claims, the relief sought, and the timing of Kaiser's causes of action. In so doing, the Bankruptcy Court concluded that the constructive trust claim was barred by the doctrine of *res judicata*, because it "attacks a material provision in the [confirmed] plan, namely, ownership and control of New Piper," and thus, was an impermissible collateral attack on the Confirmed Plan, which should have been raised as an objection during the confirmation process. However, the court found that, because no plan was pending before the Bankruptcy Court when Kaiser's damage claims were filed in state court, those claims were not barred by the Confirmation Order. Moreover, the court found the nature of the relief differed so significantly as to materially distinguish between the two types of claims, and thus, they should receive diverse treatment for *res judicata* analysis. The court also gave great weight to the history of the litigation.[4] The Bankruptcy Court admonished the parties for not having raised their concerns and objections during the confirmation process. If this had occurred, the Bankruptcy Court would have resolved these matters prior to confirmation.

The essence of the Bankruptcy Court's order is that those claims which predated the filing and confirmation of the plan—the damage claims—are not barred, because they do not change the effect and administration of the Confirmed Plan. On the other hand, the constructive trust claims contained in the amended complaint constitute an impermissible collateral attack on a plan already confirmed and an order already entered by the Bankruptcy Court, and thus, those claims cannot avoid the preclusive effect of *res judicata*.

## II. Standard of Review

District Courts must give considerable deference to a bankruptcy court's findings of fact, and will not overturn a bankruptcy court's factual findings unless it determines that those findings are clearly erroneous. *See In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990); *In re Pepenella*, 103 B.R. 299, 300 (M.D.Fla.1988).[5] A finding of fact is clearly erroneous when the record lacks substantial evidence to support it, such that an appellate court's review of the evidence results in a firm conviction that a mistake has been made. *See Blohm v. Commissioner of Internal Revenue*, 994 F.2d 1542, 1548 (11th Cir.1993).

Conclusions of law issued by bankruptcy courts are reviewed *de novo*. *See In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990). *De novo* review requires the Court to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.1984). Where an issue raises a mixed question of law and fact, District Courts are instructed to review a bankruptcy court's determination *de novo*. *See In re Marks*, 131 B.R. 220, 222 (S.D.Fla.1991), *aff'd*, 976 F.2d 743 (11th Cir. 1992).

The preclusive effect of a prior judgment issued by a federal court is a question of federal law. *See Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1501

---

4. The Bankruptcy Court was troubled by Teledyne's two-year delay in claiming that the damage claims were an indirect attack on the Confirmed Plan. The court stated that Teledyne should have sought to have the matter tried and resolved by the Bankruptcy Court before it proceeded as a proponent of the Confirmed Plan. The court also admonished Teledyne for not raising *res judicata* as a defense in the state court action once the final order of confirmation was rendered, since Teledyne now argues that Kaiser should have brought its contract and damage claims before the Bankruptcy Court. On the other hand, the court noted Kaiser's delinquency in waiting a year and a half after confirmation to seek relief against the stock issued under the Confirmed Plan, since Kaiser was claiming it was entitled to be the plan proponent and to the fruits of the plan.

5. Under Bankruptcy Rule 8013, the District Courts are instructed that "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed.R.Bankr.P. 8013.

(11th Cir.1990). Application of *res judicata* presents questions of law reviewed *de novo*. *See Richardson v. Miller*, 101 F.3d 665, 667–68 (11th Cir.1996); *Riddle v. Cerro Wire & Cable Group, Inc.*, 902 F.2d 918, 921–22 (11th Cir.1990).

## III. Discussion and Analysis

 As a threshold matter, courts must not lose sight of the overriding policy of the Bankruptcy Code (the "Code"), which is to release the debtor from the burden of his indebtedness and provide him with a new opportunity in life, free from the pressures of pre-existing debt. *See Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–11, 29 L.Ed.2d 233 (1971). The purpose of Chapter 11 is to successfully rehabilitate the debtor. *See National Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 527, 104 S.Ct. 1188, 1196, 79 L.Ed.2d 482 (1984).

 In enacting the Code, Congress set out a detailed process by which creditors of a bankrupt entity are to be repaid in an orderly fashion. *See In re A & B Heating & Air Conditioning*, 823 F.2d 462, 465 (11th Cir. 1987) (citing *In re Energy Resources Co.*, 59 B.R. 702, 706 (Bankr.D.Mass.1986)). "A viable reorganization plan typically provides a greater payment to creditors while preserving the economic life of the entity." *Id.* Thus, the primary responsibility of the bankruptcy court in a Chapter 11 proceeding is to ensure the confirmation of a reorganization plan which effectuates these precepts: rehabilitation of the debtor, while providing creditors the maximum return on their claims against the debtor's estate. *See id.*

To achieve the goals of the Code, the Bankruptcy Court supervised the reorganization proceedings over a four-year period. Through its efforts, a confirmed plan was effectuated. Throughout this extended period, the Bankruptcy Court addressed all mat-

ters placed before it which would have and could have an effect on Debtor's estate and the claims of the creditors. Not until after the process was completed did the appealing parties seek assistance from the court to resolve their private dispute.

However, in accordance with its prior conduct, the Bankruptcy Court provided Kaiser and Teledyne the opportunity to seek redress. After patiently and carefully considering the parties' respective and divergent positions, it ruled pursuant to the law. In so doing, the Bankruptcy Court found that the contractual claims Kaiser alleged against Teledyne, and the corresponding claims against DS & P, for which Kaiser requests compensatory and legal damages, constitute a private dispute. Such a dispute is independent of the bankruptcy process, even though the bankruptcy proceeding was the impetus behind the formation and eventual dissolution of their relationship. Thus, the court was without authority to enjoin Kaiser from seeking judicial redress in the forum of its choice.

On the other hand, Kaiser's attempt to impose a constructive trust, which trust was formed for the sole purpose of satisfying creditor claims, directly affected Debtor's estate. Pursuant to its Article I powers, the Bankruptcy Court is authorized to administrate the trust's assets. Thus, the court can enjoin any legal actions that might interfere with the operation of the trust.

The parties, of course, disagree. Kaiser argues that the Bankruptcy Court cannot enjoin its right to its choice of remedy and access to courts of law.[6] In contrast, Teledyne contends that there is no difference between seeking monetary damages and seeking to invoke a constructive trust. Further, Teledyne urges that, since the constructive trust count and the breach of contract, fiduciary breach, and tortious interference claims all arise from the same common nucle-

---

**6.** In Counts I through IV of Kaiser's Amended Complaint, filed in state court, it prays for compensatory damages and legal remedies in order to make it whole for Teledyne's unlawful conduct. Remarkably, in Count V, Kaiser prays for the equitable relief of a constructive trust, explaining that no legal remedy exists which would make it whole for Teledyne's allegedly illegal conduct. Teledyne argues that this "flaw" is

proof that both matters are *res judicata*. However, this discrepancy is of no consequence to this Court's analysis, since alternative pleading is permitted under the Florida Rules of Civil Procedure. Nevertheless, this tactic may prove fatal to Kaiser in prosecuting its state court action, since it will need to establish the propriety and efficacy of a damages award, having been determined that its equitable prayer for relief is *res judicata*.

us of operative facts—which are also common to the Chapter 11 proceedings—then the doctrine of *res judicata* acts to preclude Kaiser's state court action in its entirety. This Court disagrees.

In opposing the Bankruptcy Court's Final Judgment in the adversary proceeding, the parties raise one very narrow issue: the *res judicata* effect of the Bankruptcy Court's order of confirmation on a state court action borne out of a relationship developed and destroyed during the pending bankruptcy. This singular issue necessarily requires the Court to resolve several subissues: (1) whether the confirmation order meets the elemental requirements of *res judicata* as to the state court action; (2) whether Kaiser was a party-in-interest and was, therefore, required to file its objections or otherwise raise the issues in its state complaint in the bankruptcy proceeding; (3) whether the constructive trust and damages claims are distinguishable, thereby warranting different analysis for *res judicata* purposes; (4) the preclusive effect of a bankruptcy court's confirmation order; and (5) the power of the Bankruptcy Court to hear and adjudicate cases having no effect on a debtor or its assets. Upon resolving these matters, this Court must make the ultimate determination whether the Bankruptcy Court abused its discretion in finding, in part, that its Confirmation Order is *res judicata*.

### A. Applying the Doctrine of *Res Judicata*

■ Under *res judicata* principles, a final judgment on the merits bars the parties or their privies from relitigating the same cause of action or issues that could have been raised in that action. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). *Res judicata*, or claim preclusion, "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen*, 449 U.S. at 94,

101 S.Ct. at 414. It is a "rule of fundamental repose important for both litigants and for society." *In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985).

■ A judgment is *res judicata* not only as to what was actually pleaded, but also as to what could have been pleaded. *See id.* at 193. A final judgment on the merits of a cause of action rendered by a court of competent jurisdiction binds the parties to the suit and their privies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to *any other admissible matter which might have been offered for that purpose*." *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876) (emphasis added). The judgment, once entered, precludes relitigation between the parties on any ground, absent fraud or some other invalidating factor. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

■ The doctrine of *res judicata* may be properly applied only if certain requirements are met. In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. *See Israel Discount Bank Ltd. v. Entin*, 951 F.2d 311, 314 (11th Cir.1992); *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 (11th Cir.1990). In the context of bankruptcy proceedings, these elements have been applied to preclude collateral attacks on orders confirming a plan of reorganization. *See, e.g., In re Howe*, 913 F.2d 1138, 1143 (5th Cir.1990).

### 1. *The Order Was Issued by a Court of Competent Jurisdiction*

■ It cannot be disputed that the Bankruptcy Court is a court of competent jurisdiction, authorized to enter the order that confirmed the Chapter 11 reorganization plan.[7]

---

7. The Confirmed Plan and Confirmation Order, rather than the Final Judgment rendered in the

adversary proceeding, provide the prior determination that precludes subsequent claims. *See,*

Nevertheless, the parties challenge the power of the Bankruptcy Court to enter an order that affects rights extrinsic to the bankruptcy proceeding. However, a review of the proceedings, the Confirmation Order, and the Final Judgment illustrate that the actions of the Bankruptcy Court are well supported by the provisions of the Code and case law interpreting the court's provisional powers.

■■■■ The purpose of the Code is the collection and equitable distribution of the debtor's estate to its creditors. *See In re May*, 12 B.R. 618, 621 (N.D.Fla.1980). To effectuate this purpose, bankruptcy judges are granted broad powers to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a).[8] Yet, this grant of equitable power is not unlimited. While the grant of such power is extensive, "it is an extraordinary exercise of discretion to use that power to stay a third party action not involving the debtor." *In re Brentano's, Inc.*, 36 B.R. 90, 92 (S.D.N.Y.1984). To justify such actions, there must be some effect on the debtor's estate stemming from the action before there is bankruptcy court jurisdiction to enjoin it. *See In re Energy Coop., Inc.*, 886 F.2d 921, 929 (7th Cir.1989) (§ 105(a) confers "authority to enjoin actions which threaten the integrity of the bankrupt's estate"); *In re A.H. Robins Co.*, 880 F.2d 694, 701 (4th Cir.1989) (third party actions may be enjoined where they "would affect the bankruptcy reorganization in one way or another such as by way of indemnity or contribution").

■■■■ Section 105(a)'s broad statutory directive that bankruptcy courts shall have the power to issue any order necessary to effectuate a Chapter 11 plan is consistent with the general understanding that these tribunals are courts of equity. As such, they have broad authority to alter creditor-debtor relationships. *See In re Heron, Burchette, Ruckert & Rothwell*, 148 B.R. 660, 685 (Bankr.D.D.C.1992); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("equitable powers ... must and can only be exercised within the confines of the Bankruptcy Code."). Therefore, the Bankruptcy Court's decision to preclude Kaiser from interfering with the Confirmed Plan by invoking a constructive trust was a valid exercise of its equitable power to enforce its own orders, and thus, was entered by a court of competent jurisdiction. *See Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (courts have the power to enforce their lawful orders).

## 2. The Confirmation Order Is a Final Judgment on the Merits

In challenging the *res judicata* effect of the Confirmation Order, incorporating the Confirmed Plan, Kaiser argues that it is not a final judgment on the merits of its contract and tort claims against Teledyne and DS & P. Therefore, according to Kaiser, the Confirmation Order should not bar the equitable remedy of constructive trust sought for these causes of action. The Court finds Kaiser's argument cannot be reconciled with the Code and applicable case law.

■■■■ It is well-settled that a bankruptcy court's order confirming a reorganization plan is entitled to *res judicata* effect. *See, e.g., Stoll v. Gottlieb*, 305 U.S. 165, 170, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938); *In re Justice Oaks*, 898 F.2d at 1552 (the order of confirmation "is an absolute bar to the subsequent action or suit between the same parties ... not only in respect of every matter that was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented."). Moreover, the statute regulating Chapter 11 proceedings provides for a confirmation plan to

*e.g., Eubanks v. FDIC*, 977 F.2d 166, 172 (5th Cir.1992).

8. Specifically, 11 U.S.C. § 105 states, in pertinent part:
 Power of the Court
 (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

bind its debtors and creditors as to all the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action. *See* 11 U.S.C. § 1141(a).

■ Section 1141(a) provides that *all* parties to a confirmed plan are bound by its terms "whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan." The *res judicata* consequences of § 1141(a) are so encompassing as to bind "every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, *has not filed a claim*, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan." *Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir.1992) (citing 5 COLLIER ON BANKRUPTCY ¶ 1141.01[1] (15th ed.1992)) (emphasis added).

■ In sum, because no further judicial intervention was required to effectuate the confirmation process, the Confirmation Order of July 11, 1995 constituted a final order on the merits. *See In re Lykes Bros. Steamship Co., Inc.*, 217 B.R. 304, 311 (Bankr. M.D.Fla.1997). Thus, the second prong for testing the propriety of establishing that the Confirmation Order is *res judicata* is satisfied.

### 3. *Identicality of Parties*

■ Kaiser argues that *res judicata* principles do not apply to its state court action, including its constructive trust claim, because it filed no Chapter 11 claim and, therefore, was not a "party" to the Chapter 11 confirmation proceedings. Traditionally, the doctrine does not apply unless "the parties to both actions, or those in privity with them, are identical." *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir. 1991). The Eleventh Circuit will not bind a non-party to a prior decision "unless he had sufficient identity of interest with a party that his interests are deemed to have been litigated." *Herman v. South Carolina Nat'l Bank*, 140 F.3d 1413, 1424 (11th Cir.1998) (quoting *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492, 1498 (11th Cir.1987)). Neverthe-

less, relevant case law suggests that, under certain circumstances, a judgment may bar a subsequent action by a person who was not a party to the original litigation. *See, e.g., Meza v. General Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir.1990).

#### a. *Defining "Party in Interest"*

■ Under 11 U.S.C. § 1109(b), a "party in interest, including the debtor, trustee, a creditors' committee, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [Chapter 11]." Section 1109(b) was not meant to be an exhaustive list of examples, nor was it meant to exclude other types of interested parties from the purview of the section. *See In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985).

■ Case law expansively interprets "party in interest" under the Code. *See, e.g., In re Hathaway Ranch Partnership*, 116 B.R. 208, 213 (Bankr.C.D.Cal.1990); *In re Johns–Manville Corp.*, 36 B.R. 743, 747 (Bankr.S.D.N.Y.1984) (referring to "party in interest" as an "elastic concept"). Since there is no specific definition under the Code and the term appears some forty-six times therein, determining the scope of the term must be made on a case-by-case basis. *See In re Amatex Corp.*, 755 at 1042.

■ The elastic and flexible applicability of the party in interest concept arose to insure that all interests that may be significantly impacted by a Chapter 11 case have adequate opportunity for fair representation. Thus, the test for determining whether an entity is a party in interest is whether the prospective party in interest has a sufficient stake in the outcome of the proceeding so as to require representation. *See E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985–86 (11th Cir.1990); *In re Sinclair's Suncoast Seafood, Inc.*, 140 B.R. 588, 591 (Bankr.M.D.Fla.1992).

Kaiser, as asserted in its state court complaint, certainly had a stake in the outcome of the Chapter 11 proceeding as confirmation of a reorganization plan would allegedly interfere with Kaiser's pecuniary interest under the PIC Plan and the Agreement. Be-

cause of its adversarial position, no other entity existed to adequately protect Kaiser's interest. Therefore, it was incumbent upon Kaiser to bring its objection and interest to the attention of the Bankruptcy Court prior to confirmation. In failing to do so, Kaiser acted at its own peril.

### b. *Due Process Requirements*

 A party in interest cannot be bound by a confirmed reorganization plan absent reasonable notice and an opportunity to be heard prior to confirmation. *See In re Unioil,* 948 F.2d 678, 683 (10th Cir.1991). Failure to permit a party in interest, such as Kaiser, a chance to participate in the confirmation process presents significant due process issues. *See In re Spring Valley Farms, Inc.,* 863 F.2d 832, 834 (11th Cir.1989). The party in interest has a right to assume that it will receive all statutorily required notices before its claim is forever barred. *See New York v. New York, New Haven & Hartford R.R. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953).

In the instant case, Kaiser received formal notice of all hearings during the pendency of the Chapter 11 proceedings. Kaiser was given formal notice of the confirmation hearing and, in fact, attended the hearing pursuant to that notice. However, it raised no objection to confirmation despite the fact it had filed a state cause of action in which it had asserted an interest in the proceeds of Debtor's estate. Thus, it is clear that Kaiser knew of its interest prior to confirmation of the Confirmed Plan, yet it failed to bring the claims, which constituted significant assets of Debtor's estate, to the attention of the Bankruptcy Court, or the creditors, as mandated by the Code.

 In sum, a party, for purposes of *res judicata,* includes "all who are directly interested in the subject matter and who have a right to make a defense, control the proceedings, examine and cross-examine witnesses and appeal from the judgment if an appeal lies." *In re Justice Oaks,* 898 F.2d at 1550–51 (citation omitted). Thus, any participant in a confirmation proceeding "becomes a party to that proceeding, even if never formally named as such." *Id.* at 1551.

 Moreover, any "party in interest may object to confirmation of a plan." 11 U.S.C. § 1128. The broad construction of the term allows all parties affected by a Chapter 11 case to be heard. *See In re Bumper Sales, Inc.,* 907 F.2d 1430, 1433 (4th Cir.1990) (construing 11 U.S.C. § 1109(b)); *In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 849 (Bankr.S.D.N.Y.1989) (a party in interest includes all entities which can assert an equitable claim against the estate). The record indicates that Kaiser had a full and fair opportunity to participate in the confirmation proceeding, and took advantage of that opportunity by attending the hearing. Since Kaiser did not object nor appeal an allegedly erroneous ruling by the Bankruptcy Court, the court's ruling is conclusive in subsequent proceedings involving Kaiser. *See Stoll,* 305 U.S. at 172, 59 S.Ct. at 137. Therefore, for purposes of former adjudication, the Court concludes that there was sufficient identity of parties to apply principles of *res judicata* to Kaiser.

### 4. *Identicality of Causes of Action*

As demonstrated, the Confirmation Order complies with the first three prongs of the test for determining *res judicata.* At issue is the fourth element: that the earlier decision must involve the same cause of action.

 Although the Code does not provide a precise definition, the test for determining sameness of claims requires that the same transaction, evidence, and factual issues be involved. *See Sure–Snap Corp. v. State Street Bank & Trust Co.,* 948 F.2d 869, 874 (2d Cir.1991). Also dispositive is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action. *See Ray v. Tennessee Valley Auth.,* 677 F.2d 818, 821 (11th Cir.1982) ("The principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case.").

 It is without question that a bankruptcy reorganization plan can preempt a state law claim. *See, e.g., In re Mann Farms, Inc.,* 917 F.2d 1210, 1212 (9th Cir.

1990). For example, when a contractual relationship is governed by federal law, and state law purports to define the meaning of certain contractual terms, state law will be preempted by federal law. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). In circumstances involving bankruptcy, the state claim can result in a *de facto* restructuring of the creditors' claims in contravention of the federally prescribed bankruptcy plan.

The issue presented here is whether the state court action has the potential for restructuring the claims of the creditors in the Chapter 11 reorganization plan, and redefining their contractual relationship with Debtor. For that to occur, two things must be present: (1) Kaiser's state court action must seek relief which would result in the restructuring of the creditors' claims; and (2) a state court judgment must ultimately require restructuring of the creditors' claims, despite the absence of language permitting such restructuring in the Confirmed Plan.

The Bankruptcy Court concluded that Kaiser's state court action was only partly barred by the Confirmation Order. To reach this conclusion, it was necessary for the Bankruptcy Court to find distinguishing factors among Kaiser's claims. Although not an exclusive checklist, the Eleventh Circuit has provided considerations of import to assist courts in evaluating claims for purposes of applying *res judicata* principles relative to bankruptcy proceedings. *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788–89 (11th Cir. 1990). These include: (1) whether the proceeds of the litigation, if any, could be turned over to the trustee for distribution to creditors; (2) whether the dispute involves property in which the debtor has or might have an interest; and (3) whether the litigation might have an effect on creditors of the debtor. *See id.*

**B. Distinguishing Kaiser's State Court Claims for *Res Judicata* Analysis**

Confirmation of a plan "provide[s] a res judicata effect to the terms of a confirmed plan. This effect, however, is premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are properly within the scope of the confirmation proceeding." *In re Seidler,* 44 F.3d 945, 948 (11th Cir.1995) (citation omitted). Therefore, *res judicata* does not bar litigation of issues that could not be appropriately resolved in a confirmation hearing or an order of confirmation. *See id.*

The Bankruptcy Act, as amended, sets forth two types of cases as to which a bankruptcy court may take jurisdiction: core proceedings and related proceedings. *See* 28 U.S.C. § 157. Core proceedings involve rights created by the Code and are dependent upon the Code for their existence. *See In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990). Related proceedings do not arise under the Code. They must "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." *In re Smith,* 866 F.2d 576, 580 (3d Cir.1989).

A proceeding is core "if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987). If the proceeding does not invoke a substantive right created by federal bankruptcy laws, and is one that could exist outside of bankruptcy it is not a core proceeding. Although it may be related to the bankruptcy because of its potential effect, it is an "otherwise related" or non-core proceeding. *See id.* Therefore, whether federal subject matter jurisdiction exists for a bankruptcy court to decide a state law claim depends upon whether the claim is "related to" the bankruptcy case or whether the claim is within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b). *See id.* at 94.

The Eleventh Circuit has adopted what has been framed as the "conceivable effect" test: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Lemco Gypsum, Inc.,* 910

F.2d at 788 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). For purposes of subject matter jurisdiction, the civil proceedings related to bankruptcy "need not . . . be against the debtor or against debtor's property." *Id.* It is related "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

 There is no precise definition, nor simple test, for defining a cause of action. There is a predisposition, however, toward taking a broad view, looking for essential similarity of the underlying events giving rise to the various legal claims. In measuring relatedness, courts consider whether substantially the same evidence is presented, whether the same right is claimed, and whether the two suits arise out of the same transactional nucleus of facts. *See United States v. Athlone Indus., Inc.,* 746 F.2d 977, 983–84 (3d Cir.1984).

 To determine whether the cause of action that was the subject of the previously issued judgment is the same as the subsequent one, the Court must evaluate the substance of the two actions and not simply their form. *See I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986). A Bankruptcy Court's orders have preclusive effect against third parties only where the court had jurisdiction over their claims. *See Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979, 983 (5th Cir.1990). It is axiomatic that "the preclusive effect of a bankruptcy decree must reflect the reality of its limited jurisdiction." *Id.*

### 1. *Kaiser's Damages Claims for Breach of Contract Are Not Core Proceedings*

 To determine whether a bankruptcy court may appropriately adjudicate a cause of action under its core jurisdiction, courts evaluate the distinguishing characteristics between private and public rights in the context of contractual disputes. If a cause of action "is not a 'public right' for Article III purposes, then [it] may not [be] assign[ed] . . . to a specialized non-Article III court

lacking 'the essential attributes of the judicial power.'" *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 53, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989) (quoting source omitted).

The Supreme Court has characterized simple contract actions as "paradigmatic private rights" and "quintessentially suits at common law." *Id.* at 56, 109 S.Ct. at 2798. In discussing the limit of the power of the legislature to assign adjudication of private rights to non-Article III tribunals, the Supreme Court held that, if the essence of the dispute to be adjudicated is a traditional state law matter, Congress "cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity." *Id.* at 61, 109 S.Ct. 2782. It seems clear that a simple contract action exceeds the authority of a bankruptcy court, an Article I tribunal.

 Federal courts, including bankruptcy courts, are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Resolution of a controversy which may have only an incidental effect on the debtor's estate is not related to the bankruptcy proceeding and is not one over which the bankruptcy court can exercise jurisdiction. *See Dean v. American Gen'l Finance, Inc.,* 191 B.R. 463, 469 (M.D.Ala. 1996). Applying these rules, it is clear that Kaiser's damages claims will have no effect on Debtor or any creditors, other than Teledyne and DS & P independent of and outside the reach of the bankruptcy process.

Counts I through IV of Kaiser's Amended Complaint filed in state court assert largely contractual claims for damages. Any damages awarded against Teledyne are not claims against Debtor's estate. Therefore, whether damages are awarded or not will have no impact on the scheduled claims of creditors referred to in the Confirmed Plan.

Moreover, Kaiser's state court damages claims do not arise out of the same nucleus of operative fact as the bankruptcy proceeding. Through these claims, Kaiser does not seek equitable relief in state court, only damages.

Under these circumstances, Kaiser is not attempting to collaterally attack the Confirmation Order. Nor is it attempting to restructure the creditors' claims. Rather, it is simply pursuing claims against parties outside the bankruptcy context. Because these claims constitute a dispute among private, third parties, and do not involve the Debtor or Debtor's estate, the outcome of Kaiser's damages claims will have no "conceivable effect" on the administration of the estate as reorganized under the Confirmed Plan.

In sum, the contractual dispute between Kaiser and Teledyne is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state contract action that, had there been no bankruptcy, could have proceeded in state court. Thus, Kaiser is entitled to have its claim heard by an Article III court. *See, e.g., In re Shafer & Miller Indus., Inc.,* 66 B.R. 578, 580 (S.D.Fla.1986) ("a state created right to recover damages for breach of contract, even though such damages would ultimately enhance the debtor's estate, did not transform what is essentially a private right into a public right.... [P]rivate rights must be finally adjudicated by Article III judges."). Accordingly, Counts I through IV of Kaiser's Amended Complaint are not barred by *res judicata.*

### 2. *Kaiser's Claim for Constructive Trust Is a Core Proceeding*

■ As previously articulated, an action is a core proceeding when the dispute cannot be severed from the remainder of the bankruptcy case and affects the distribution of the debtor's assets. *See In re Case,* 937 F.2d 1014, 1019–20 (5th Cir.1991). Because the only proper forum for determining whether assets held by a debtor are held in a constructive trust is the bankruptcy court, such proceedings must be considered core, and since a determination of the proper beneficiaries of that trust is inextricably tied to the finding that a constructive trust exists and is intimately tied to the traditional bankruptcy functions, that, too, must be considered a core proceeding. *See In re Johnson,* 960 F.2d 396, 402 (4th Cir.1992).

The Court must determine whether, at the time Kaiser amended its state court complaint to assert a claim for a constructive trust based on contractual breaches, the claim could have a conceivable impact upon the handling and administration of the bankruptcy estate. This inquiry is not difficult.

In determining whether the constructive trust claim was barred by the Confirmation Order, the Bankruptcy Court focused on the possible effects on the administration of Debtor's estate. In so doing, the court found that creditors would be harmed by a delay in payment. Kaiser has failed to show any other possible effect the cause of action would have on the Confirmed Plan. Thus, the order confirming the plan of reorganization is *res judicata* of the constructive trust claim encompassed in Count V of Kaiser's Amended Complaint.

### IV. Conclusion

Facilitating the reorganization process is the overriding policy behind Chapter 11. *See In re Lykes Bros. Steamship Co., Inc.,* 217 B.R. at 310. "The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets, but it cannot be extended beyond its purpose .... once all disputes concerning the creditors' stakes in the bankrupt's property have been resolved." *In re Lemco Gypsum, Inc.,* 910 F.2d at 789–90.

Federal courts recognize the importance of finality of judgments in a bankruptcy case. *See, e.g., Howe,* 913 F.2d at 1147. The Eleventh Circuit, as well as a host of other circuit and district courts, have also recognized the applicability of the time-honored principle of *res judicata* to confirmed, final bankruptcy hearings. *See, e.g., In re Justice Oaks,* 898 F.2d at 1551.

The Confirmed Plan was not *res judicata* relative to Kaiser's damages claims, since non-Article III judges do not have the power to adjudicate, render final judgment, and issue binding orders on traditional contract actions that arise under state law. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 84, 102 S.Ct. 2858, 2878, 73 L.Ed.2d 598 (1982). Kaiser's contract action does not bear a close nexus to any statutory public right. Rather, its contractual damages causes of action "are paradigmatic pri-

vate rights" grounded in state law. That part of Kaiser's suit seeks compensation for damage done. It has nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims.

In sharp contrast, because Kaiser's constructive trust claim would most certainly impact the administration of Debtor's estate, disabling and significantly altering the distributions to creditors under the Confirmed Plan, the matter was a core proceeding. · As such the Bankruptcy Court had the authority to resolve the issue and preclude disruption to the reorganization process.

Based on the foregoing, this Court agrees with the Bankruptcy Court that only Kaiser's constructive trust claim was barred by the doctrine of *res judicata.* Accordingly, the Final Judgment entered upon the Order Granting in Part and Denying in Part [Cross] Motions for Summary Judgment rendered by the Bankruptcy Court for the Southern District of Florida on January 16, 1998 is hereby AFFIRMED.